IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| SAMUEL FREEMAN | : | NO. 06-205-03/06-207-01 |

<u>**MEMORANDUM**</u>

**Stengel, J.**                                                            **March 27, 2008**

Defendant Samuel Freeman has requested to receive an unredacted copy of the applications the Government submitted to the Court when it sought authorization for the Title III wiretap that ultimately led to the instant indictments.  On March 20, 2008, I issued an Order directing the Government to provide Defendants with a copy of the Title III wiretap applications and further ordered that the Government may redact only those portions necessary to protect the identity of any confidential informants.  I now issue this memorandum to explain my reasoning.

**I.        BACKGROUND**

Defendant Samuel Freeman has been charged with conspiracy to distribute crack cocaine, distribution of crack cocaine, and numerous uses of a communication facility.  Prior to the filing of these charges against him, the Government applied to the United States District Court for the Eastern District of Pennsylvania for, and was granted, on February 17, 2006, an Order authorizing the interception of certain wire communications over a mobile phone used by Freeman.  On March 27, 2006, the Government applied for, and was granted, a second Order authorizing the interception of certain wire communications over a mobile phone used by Freeman.  Anticipating that it would introduce evidence derived from these wiretaps at trial, the Government, in accordance with 18 U.S.C. § 2518(9), provided Freeman with a copy of the wiretap applications.  The Government,

however, redacted certain portions of the applications.  In November and December 2007, Freeman requested that the Government provide him with an unredacted copy.  In response, the Government informed him that it believed it had fully complied with its discovery obligations.  During the Final Pretrial Conference, Freeman renewed his request for an unredacted copy of the applications pursuant to § 2518(9). The Government, at the Court's direction, filed a memorandum of law outlining its position and the legal authority on which it relied.  The Government maintains that it has satisfied its obligations under § 2518(9) and should not be required to provide an unredacted copy of the applications because the redactions protected a separate and ongoing investigation and the identities of confidential informants who supplied information for the applications, but are not expected to testify at trial.  Freeman filed a response on March 18, 2008.

## II.     STANDARD

The wiretaps at issue in this case were obtained pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522 ("Title III").  Section 2518(9) provides as follows:

> The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved.

18 U.S.C. § 2518(9).

## III.    DISCUSSION

The Government relies primarily on the informer's privilege to justify the redactions it has made to the wiretap applications.  In Roviaro v. United States, 353 U.S. 53 (1957), the Supreme

2

Court recognized "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Id. at 59 (citations omitted).  The privilege, commonly known as the informer's privilege, is not without limits: "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61; see also  United States v. Jiles, 658 F.2d 194, 198-99 (3d Cir. 1981).  To overcome the informer's privilege, there must be some indication that access to the informer may be "helpful to the defense of an accused or essential to a fair determination of a cause." United States v. Brenneman, 455 F.2d 809, 811 (3d Cir. 1972) (citing Roviaro, 353 U.S. at 60-61) (quotation omitted).  A defendant's mere speculation that the informant's identity or information from the informant will help in the defense is not sufficient.  See United States v. Bazzano, 712 F.2d 826, 839 (3d Cir. 1983).  The burden is initially on the defendant to show the need for disclosure of a confidential informant's identity.  Jiles, 658 F.2d at 197.  If the defendant meets this burden, the court must balance the defendant's interests in disclosure against the Government's interest in maintaining the confidentiality of its informant.  Id. at 197-98.

Freeman's request compels us, in part, to address whether this informer's privilege applies to disclosures required of the Government under § 2518(9).  Several courts have already addressed this issue.  In United States v. Danovaro, 877 F.2d 583 (7th Cir. 1989), the defendant asserted that the district court had denied him the opportunity to challenge the affidavits supporting the Government's wiretap application by permitting the Government to redact portions of the affidavits before turning them over to him.  Id. at 588.  Danovaro held that it was not inconsistent with § 2518(9) to allow the Government to redact information it included in an affidavit supporting a

wiretap application when the redacted information was both dangerous to an informant and unnecessary to sustain the warrant.  Id.  The court reasoned that statutes such as § 2518(9) requiring disclosure, but silent on the question of privilege, do not override customary privileges, and that the privilege to withhold information important to the safety of an informant was established long before Congress enacted Title III.  Id.

The court in United States v. Arreguin, 277 F. Supp. 2d 1057 (E.D. Cal. 2003), expressly disagreed with Danovaro.  Id. at 1062.  In Arreguin, the Government sought to redact information from an affidavit attached to its wiretap application that it claimed could put an informant in danger if it were disclosed to the defendant.  Id. at 1059.  In addressing the question of whether the Government may redact this information, Arreguin noted that Congress, in passing Title III, was not silent on the question of privilege, as Danovaro had stated.  Id.  Rather, according to Arreguin, Congress took deliberate action to preserve at least one type of privilege, referring to the portion of the statute that provides that "[n]o otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character."  Id. (citing 18 U.S.C. § 2517(4)).  Consequently, Arreguin concluded that because Congress did not expressly preserve the informer's privilege, it did not intend for this privilege to apply to disclosures required by § 2518(9).  Id. at 1062.

Finally, in United States v. Coles, Crim. A. No. 05-440, 2007 U.S. Dist. LEXIS 74558 (E.D. Pa.) (Surrick, J.), the Government produced wiretap applications and supporting affidavits, but redacted information regarding the identity of the confidential informants referenced in the affidavits. In addressing the propriety of this redaction, the Coles court disagreed with the Arreguin court's conclusion that Congress's intent was obvious from its failure to mention the informer's privilege

4

in Title III.  Instead, <u>Coles</u> found that the statutory language was not dispositive on the issue before it and looked to other cannons of statutory construction, specifically the Whole Act Rule, which "'instructs that subsections of a statute must be interpreted in the context of the whole enactment.'" <u>Coles</u>, 2007 U.S. Dist. LEXIS 74558, at *16 (quoting <u>United States v. Cooper</u>, 396 F.3d 308, 313 (3d Cir. 2005)).  <u>Coles</u> noted that, in passing Title III, Congress intended to preserve due process rights of defendants, provide the Government with an effective investigative tool, and protect the privacy rights of third parties potentially affected by wiretaps.  <u>Id.</u>  at *17.  <u>Coles</u> recognized that when the Government exercises its powers pursuant to a Title III wiretap order, confidential informants, as well as third parties whose communications are intercepted by the wiretap, have a privacy interest.  <u>Id.</u>  Consequently, <u>Coles</u> stated that if it followed the <u>Arreguin</u> court, it would advance one Congressional purpose, the preservation of due process rights, at the expense of the other two, effective crime fighting and third party privacy, something that it was not willing to do based solely on the "textual peculiarities discussed in <u>Arreguin</u>."  <u>Id.</u>  Instead, <u>Coles</u> applied a "commonsense approach" in which it balanced the three competing goals.  <u>Id.</u> at *20.  In doing so, it noted that the information redacted to protect the confidential informants' identities consisted of only four sentences and that defendant made no colorable argument that the information was either essential or useful to his defense.  <u>Id.</u>  It therefore permitted the Government to redact the information.  <u>Id.</u>

Like the court in <u>Coles</u>, I find it unwise to rely solely on the textual peculiarities of Title III to conclude that Congress's intent was that the informer's privilege not apply to disclosures pursuant to § 2518(9).  Consequently, I disagree with the reasoning and conclusion of <u>Arreguin</u>.  Moreover, I find persuasive the reasoning of the United States Court of Appeals for the Seventh Circuit in

Danovaro, which noted that "[s]tatutes requiring disclosure, but silent on the question of privilege, do not override customary privileges." Danovaro, 877 F.2d at 588 (citing Upjohn Co. v. United States, 449 U.S. 383, 397-98 (1981)). Consequently, I conclude that the Government may redact from a wiretap application information that is protected by the informer's privilege prior to disclosing the application to a defendant. This conclusion is consistent with Congress's goals in passing Title III of not only protecting defendants' due process rights, but also providing the Government with an effective investigative tool with which to fight organized crime and protecting the privacy rights of third parties. See Coles, 2007 U.S. Dist. LEXIS 74558, at *17 (discussing the three goals of Title III) (citations omitted).

In addition to information pertaining to the identity of confidential informants, the Government also seeks to redact from the wiretap applications information concerning a separate and ongoing investigation. However, while the Government points to the informer's privilege to justify its redactions of those portions of the wiretap applications concerning the identities of confidential informants, it has not provided me with any compelling legal authority that supports its redaction of information concerning a separate and ongoing investigation. On its face, the opinion in United States v. Yoshimura, 831 F. Supp. 799 (D. Haw. 1993), appears to lend some support for the Government's position; however, I find its reasoning to be flawed and thus decline to follow it.[1]

---

[1]The court in Yoshimura addressed a situation in which the Government sought to redact information from its wiretap application to protect an ongoing investigation and the safety of undercover FBI agents. Id. at 802. The court noted that Title III requires applications and orders to be sealed by a judge and does not permit their disclosure without a showing of good cause. Id. at 803 (citing 18 U.S.C. § 2518(8)(b)). Without meaningful elaboration, the court then conclusively stated that the good cause requirement of § 2518(8)(b) also applies to disclosures required by § 2518(9) and concluded that, because the defendant did not show good cause for disclosure of the redacted portion of the application, he was not entitled to such disclosure. Id. at 807. I find this reasoning to be flawed because § 2518(8)(b)'s good cause requirement applies in a context that is

6

I recognize that my decision may arguably compromise an ongoing and separate investigation. However, this is a problem of the Government's own making.  The Government chose to include information concerning a separate investigation in its wiretap application even though, as the Government now contends, such information was unnecessary to obtain the wiretap.  As another judge of this Court has eloquently stated:

> I recognize that where the wiretap application and order contain sensitive information the disclosure of which could prejudice an ongoing investigation, the government may be put to the hard choice of either foregoing its proceeding against the defendant or risking the frustration of its investigation.  But this is a choice which Congress has in plain language decreed the government must make when it seeks to deprive a person of his liberty on the basis of the wiretap evidence.  In truth it is not much different than a number of other difficult decisions which the government must make in pursuing a criminal prosecution, such as when it must decide whether to proceed with a case that will require revelation of the identity of an informant.

United States v. Manuszak, 438 F. Supp. 613, 625 (E.D. Pa. 1977).  Accordingly, the Government may not redact portions of the wiretap applications for the purpose of protecting a separate and ongoing investigation.  If the Government wishes to use evidence at trial that is derived from the wiretap, it must disclose these portions of the wiretap applications to Freeman and any co-defendants.

An appropriate Order was entered on March 20, 2008.

BY THE COURT:

s/ Lawrence F. Stengel, J.
LAWRENCE F. STENGEL, J.

---

entirely distinct from that in which disclosures are required pursuant to § 2518(9).  Furthermore, § 2518(9), unlike § 2518(8)(b), simply makes no reference to any such good cause requirement.